## Manely v. Pennsylvania Railroad Company.

*Negligence—Province of court and jury—Scintilla doctrine—Grade cross-ing—Failure to give notice of approaching engine.*

1. Where plaintiff's decedent is alleged to have been killed at a grade crossing through the negligent failure of defendant's servants to give notice of an approach-ing engine, if one witness for the plaintiff testifies positively that no whistle was blown and no bell was rung as the engine approached, query whether this is suffi-cient to send the case to the jury, if the engineer and fireman testified that the bell was ringing continuously for some time before the accident, and two of defendant's other witnesses testified that they heard the whistle blown, and one of plaintiff's witnesses testified that her attention was attracted to the passing of the engine by the ringing of the bell, and another, that he saw the bell being pulled.

*Contributory negligence — Plaintiff's decedent killed on second track of grade crossing by engine in broad daylight.*

2. A pedestrian, before attempting to cross a street on which there are several railroad tracks at grade, is bound to stop, look and listen before making the attempt, and though he is not required to stop again, on or between the tracks to look and listen, he is bound to proceed with care and keep a lookout so long as danger is to be apprehended.

3. The presumption of law that a decedent killed at a grade crossing performed his duty may be rebutted in the absence of direct testimony by the circumstances of the accident, as the physical conditions of the ground at the time and like mat-ters, and, unless only one inference may be drawn from the facts, the question whether the presumption has been rebutted is for the jury.

4. Where the deceased stopped, looked and listened before attempting to cross a street containing two railroad tracks, crossed the first track without accident and was killed on the second by an engine running at twelve miles an hour, which she could have seen had she looked, as there was a clear view for a thousand feet, or at least a great part of that distance, and it being broad daylight, without any other cars or engines on the tracks interfering with her vision, and there is evidence that she walked across the rails with her head down, apparently absorbed in thought, the inference is inevitable that she was guilty of contributory negligence, and judgment for the defendant will be entered *n. o. v.*

Motion for judgment *n. o. v.* C. P. No. 2, Phila. Co., Dec. T., 1920, No. 1467.

*Michael D. Hayes,* for plaintiff; *Francis B. Biddle,* for defendant.

STERN, J., April 10, 1923.—Defendant's motion for judgment *n. o. v.* is urged upon two grounds; one that there is no evidence of negligence on the part of the defendant, and the other that the facts convict the plaintiff's deceased wife of contributory negligence.

1. At the trial, plaintiff's counsel expressly disavowed any claim of negli-gence on the part of the defendant, as far as the speed of the locomotive was concerned, and, indeed, on that point the testimony is uncontradicted that that speed did not exceed twelve miles an hour. The only ground urged by plaintiff to support the claim of negligence was in the failure of the crew of the engine to ring the bell as the engine approached the scene of the accident. On this point, one witness for plaintiff, Joseph Camp, a boy playing around the street, said that he did not hear any bell, and another witness, Thomas A. Ward, said that no whistle was blown and no bell was rung. On the other hand, plaintiff's witness, Mary B. Ward, said that her attention was attracted to the passing of the engine by a bell ringing at Federal Street. Another of plaintiff's witnesses, Rodger Demming, said that he saw the bell being pulled. Two of defendant's witnesses, Walter Lang and John De Young, said their attention was attracted by hearing the whistle blown, and, in addition to this, the engineer and the fireman both testified that the bell was ringing continu-ously for some time prior and down to the instant of the accident. It is a grave question whether, in view of all this positive testimony, not only on the

part of defendant's witnesses, but also, as above pointed out, on the part of some of the plaintiff's witnesses as well, the court should not hold that the testimony in regard to negligence in this respect was not sufficient to go to the jury. However, in view of the statement of plaintiff's witness, Thomas A. Ward, that no whistle was blown and no bell was rung (as distinguished from a mere statement that he heard no whistle blown or bell rung), this may amount to the necessary scintilla of evidence to go to the jury, the remedy for a perverse verdict against the weight of the testimony on this point being by the granting of a new trial rather than by the entry of a judgment *n. o. v.*

2. Upon the second point, however, namely, the contributory negligence of plaintiff's deceased wife, the court has less hesitation. Of course, there is the presumption against such contributory negligence; the law assumes that the decedent performed the duty which required her to stop, look and listen before attempting to cross the tracks. This, however, was not her only duty. It is true that a pedestrian, having once stopped, is not bound to stop again on or between the tracks to look and listen, but he is bound to proceed with care and keep a lookout so long as danger is to be apprehended: Thomas *v.* Pennsylvania R. R. Co., 275 Pa. 579 (583). The presumption of law that the decedent performed her duty may be rebutted by evidence to the contrary, and, as stated by the Supreme Court in Miller *v.* Pennsylvania R. R. Co., 256 Pa. 142 (149): "In the absence of direct testimony, the circumstances of the accident, the physical conditions of the ground at the time it happened, and like matters, are competent evidence for this purpose (that is, to rebut the presumption), and unless only one inference may be drawn from the facts, the question whether the presumption has been rebutted is for the jury."

In a case where only one inference may be drawn from the facts, the court is justified in determining the question of contributory negligence as matter of law, and several cases in which the court did so determine the question are cited in the opinion in Miller *v.* Pennsylvania R. R. R. Co.

In the present case the court is of opinion that only one inference may be drawn from the facts, and that that inference is that the plaintiff's decedent was guilty of contributory negligence. Whether the bell was rung or whistle blown or not, the facts remain that this accident happened in broad daylight on a clear day, and that at the point where this unfortunate woman crossed the defendant's tracks there was a clear, unobstructed view of an approaching train of possibly 1000 feet, or, in any event, for a considerable part of that distance. The evidence was uncontradicted that there were no other engines, cars or trains at or about the scene of the accident which in any way obstructed the vision. The distance at which an approaching engine could be seen was not merely a matter of theory, as disclosed by the evidence, but we have the significant fact that all of the eye-witnesses, both for plaintiff and defendant, actually saw the engine approaching for a considerable distance before the point where the accident occurred. The plaintiff's witness, Thomas A. Ward, saw it at Manton Street. Plaintiff's witness, Rodger Demming, saw it between Federal and Manton Streets, as did also plaintiff's witness, Joseph Camp, and, as a matter of fact, the witness Walter Lang called to the woman before she was struck, warning her of her danger. The witness John De Young saw the engine between Ellsworth and Federal Streets. The question then arises, why, if all the witnesses present saw the engine approaching, the deceased woman herself failed to do so? This is answered by the testimony to the effect that she was walking across the street with her head down, apparently absorbed in thought. As a matter of fact, the testimony would seem to indicate that she was struck immediately upon stepping on to the south-bound

3 D. & C.

track. Moreover, a simple calculation will show the following fact, namely, that at the time she first stepped into the point of danger the engine could not have been more than seventy-two feet away. As above stated, the evidence was all to the effect that the engine was not proceeding at greater speed than twelve miles an hour. Let us suppose that Mrs. Manely walked across the south-bound track at the rate of only one mile per hour, and that she was not struck until she reached the furthermost rail, which are the hypotheses most favorable to her. Even at such low rate of travel, the engine was not going at more than twelve times her own speed, and since the passage across the rails could not have been more than six feet, it follows, as above pointed out, that the engine could not have been more than seventy-two feet from her when she started over the rail of the track upon which she was struck. Therefore, whether the bell was rung or not, remembering that the accident was in broad daylight, there is no possible inference that can be drawn except that she was guilty of contributory negligence, and that, had she looked and observed even the smallest degree of care, she would have seen the engine approaching, as did all of the eye-witnesses. As already stated, there were no other engines or trains within sight, and she was in no danger whatever, except from the engine which in fact struck her, and the approach of which she unfortunately neglected to observe.

For the reasons thus indicated, the court believes that it is obliged to grant the defendant's motion for judgment n. o. v.