Muzychuk, to use, Appellant, *v.* Yellow Cab Company.

Argued October 9, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Edward O. Spotts, Jr.,* for appellant.

*H. E. McCamey,* with him *H. A. Robinson,* of *Dickie, Robinson & McCamey,* for appellee.

OPINION BY MR. JUSTICE DREW, November 24, 1941:

Martha Muzychuk, also known as Martha Massey, a married woman, received personal injuries, which resulted in her death, while a passenger in a taxicab of defendant, Yellow Cab Company. She was survived by her husband and a minor daughter, Ruth Massey Burns, now married and of the age of twenty years. The husband, without averring in his statement that he and the minor child were the parties entitled to any damages recovered in suit, instituted an action in trespass against defendant for the alleged wrongful death of his wife, the negligence claimed being the sudden stopping of the cab which resulted in his wife being thrown therefrom. About twelve days after this action was filed, a similar suit was brought against defendant by Commonwealth Trust Company, guardian of the minor, based upon the same cause of action. At the trial of the suit of the husband, damages were expressly limited by his counsel, without objection of defendant's counsel, to loss to him of his wife's services, as well as for medical, hospital and funeral expenses. The jury rendered a verdict for defendant, and the husband thereafter took no further

steps to prosecute his claim. Later, on stipulation of counsel for the minor's guardian and for defendant, the court en banc heard arguments as to whether or not the verdict for defendant in the husband's action was res judicata as to the suit brought in behalf of the minor. The court below then stayed the minor's suit in order to afford her guardian an opportunity to further petition that court to grant a new trial in the father's action and allow the minor to intervene therein. Thereupon, the guardian petitioned the court for such relief. Although some thirteen months had elapsed since the rendition of the verdict, no judgment had been entered on it. After further argument, the court below, being of the opinion that the minor had been deprived of her day in court, granted the guardian permission to intervene in the minor's behalf in the husband's suit, and further ordered as follows: ". . . the motion for a new trial is granted, the Rule heretofore issued made absolute, and a new trial ordered, said new trial being granted only as it affects any damages which may have been occasioned to Ruth Massey and that the suit be prosecuted for the use and benefit of Ruth Massey." Accordingly, a new trial was had, which also resulted in a verdict in favor of defendant. From the entry of judgment on the verdict, following dismissal of its motion for a new trial, the guardian of the minor daughter has appealed to this Court.

A careful examination of the record reveals the following material facts: Martha Muzychuk, also known as Martha Massey, summoned a taxicab owned by defendant and operated by one of its drivers, and entered it as a passenger at about twelve-thirty A. M., on June 1, 1936, at the corner of Butler and Penn Avenues, in the City of Pittsburgh. She directed the driver to take her to her residence on Shingiss Street, near the downtown section of the city. At the time Mrs. Muzychuk was under the influence of liquor, but could walk without staggering. Upon reaching her home, she discovered she had no money. The driver, under her directions, then

drove her to the homes of her two sisters, who resided nearby, in order to procure money with which to pay the taxicab fare. The first sister approached did not have any money, and the other refused to give any to Mrs. Muzychuk and told the driver to take her to jail where she might sober up. Mrs. Muzychuk then, with the assistance of the driver, reëntered the cab and seated herself in the rear seat. The taxicab then proceeded down Boyd Street, a steep thoroughfare running parallel to Shingiss Street, toward the downtown section of the city.

The testimony is in direct conflict as to what happened thereafter. Two witnesses called in behalf of the minor plaintiff stated that, while sitting on the front porch of their home on Boyd Street, they observed the cab as it rounded the corner onto that street from Locust Street, a short distance away, and at that time its rear left door was opened about three or four inches, and that it remained so until the cab reached a point directly in front of their residence. There, these witnesses testified, the cab was brought to a sudden, hard stop, which caused Mrs. Muzychuk to be thrown out of the car head first to the street. On the other hand, however, the evidence offered by defendant showed that after the driver assisted his passenger back into the cab upon leaving her sister's home, he closed the car door securely, and then started to drive away, intending to turn her over to the first policeman he met. It was further shown by defendant that as the cab descended Boyd Street, at about ten or fifteen miles an hour, the light on the panel of the taxi lighted, indicating that its rear door had been opened, and immediately the driver applied the brakes and brought the cab to a slow stop. It further appears from the evidence adduced on behalf of defendant that when the driver brought his cab to a stop, he observed that his passenger was missing from the rear seat, and he then alighted and found her about three feet behind his car. The driver then placed Mrs. Muzychuk in the cab and drove her to the hospital. It was also shown by defend-

ant that an examination of the cab door, made shortly after the accident, disclosed that it was in perfect order.

Plaintiff contends that the learned trial judge erred in permitting defendant, over the objection of her counsel, to read into the record, as an admission, a portion of the testimony given by her father at the first trial as to his contribution to his wife's support. This testimony was offered to rebut the minor's claim that her mother earned the funds with which she was supported. We can find no merit in this contention. It must be remembered that the only right of action, under the circumstances here presented, is that given by the Acts of April 15, 1851, P. L. 669, and April 26, 1855, P. L. 309, as amended by the Act of June 7, 1911, P. L. 678, since actions for wrongful death were unknown at common law: *Kaczo-rowski v. Kalkosinski,* 321 Pa. 438, 441. These statutes have been interpreted to mean that the right of action is not joint, but solely in the first party named, or, failing such party, in the next class to the exclusion of the third: *Birch v. Railway,* 165 Pa. 339. In speaking of this act, it was said, in *McFadden v. May,* 325 Pa. 145, 148: "The right to maintain the action must not be confused with the right to share in the distribution of the amount recovered. Section 2 of the Act [April 26, 1855, P. L. 309] requires all the members of the named classes surviving the decedent to be mentioned in the statement of claim. The recovery by the person or persons bringing the suit is for the benefit of the whole group, and each member thereof is entitled to a distributive share under the intestate laws: [Citations omitted]. In *Shambach v. Middlecreek Elec. Co.,* supra [232 Pa. 641], the court pointed out that while children would not be entitled to sue where the widow survived, they would share in the distribution of the sum recovered if their mother sued." And on p. 151: "Our research has discovered no case effectively disqualifying the husband to bring an action for wrongful death, even though on recovery and distribution he would be limited to nominal damages. The

trend of Pennsylvania decisions is to *bar an action by those in another class while a member of a prior class is still alive."* (Italics added).

Thus, in the controversy here before us, it is obvious that the separate action instituted by the guardian of the minor was completely barred by the suit brought by the husband of Mrs. Muzychuk, and for that reason should have been quashed. Since the minor was not named in the husband's statement of claim, as required by the Act of April 26, 1855, P. L. 309, and the action limited solely to his damages at the first trial, the minor was clearly deprived of her day in court. Therefore, under such circumstances, we cannot say that the learned court below in any way abused its discretion in granting a new trial thirteen months after the rendition of the verdict, in order to protect the beneficial interest of this minor, since no judgment had as yet been entered on that verdict. However, that tribunal exceeded its statutory power in limiting the new trial to only damages which might have been occasioned to the child. It should have, under such circumstances as here presented, permitted the new trial, without such limitation, just as though the husband had properly instituted the action and named his daughter in his statement, particularly since the husband is still living and apparently easily available, for two separate actions cannot be sanctioned under these statutes. Otherwise, it is clear that if the claim of the husband were properly litigated at the first trial, so was that of his child who had but a beneficial interest in the sum which might have been recovered. However, since no complaint was made regarding this most irregular procedure by the husband or the defendant, no appeal having been taken by either from the order granting the new trial or from the entry of judgment on the second verdict, and because no harm could possibly have been suffered as a result by the minor plaintiff, we will treat the second trial as though not limited in its scope to the claim of the daughter alone. So considered, it readily

becomes apparent that the father was actually the plaintiff and therefore any of his admissions in the previous hearing were properly admissible in the second trial. "A party's testimony, if voluntarily given . . . may be used against him as admissions, not only in the particular case, but in any subsequent proceedings in which they are relevant . . .": Henry, Pennsylvania Trial Evidence, 3d Ed., section 65. See also *Truby v. Seybert,* 12 Pa. 101, 103; *Charles v. Arrington,* 110 Pa. Superior Ct. 173, 177. Such admissions are admissible without first showing that the declarant is dead, absent from the jurisdiction or otherwise unavailable: Wigmore on Evidence, 3d Ed., Vol. IV, section 1049. Moreover, even if the husband had no beneficial interest in the proceeds of the recovery, only retained the nominal right to sue and had not exercised that right by the entry of suit, and for that reason the guardian of the minor had instituted the action solely for the child in the name of the father, still any relevant admissions of the father would have been properly admissible. As to such a situation, it was said by this Court, in *McFadden v. May,* supra, p. 153: "Since the suit in the present case will, under such procedure, be in the name of the decedent's husband, the defendant may interpose any defenses which he would have as against the husband as plaintiff. If, for example, it be true, as suggested by defendant, that a settlement has been made in good faith with the husband, that fact could be shown as constituting a defense to the action. The defendant will thus be in all respects in the same position as if the husband had brought suit voluntarily in his own name."

Counsel for the minor plaintiff contends that the learned trial judge erred in stating in one portion of his charge that the damages recoverable were limited by the loss sustained by minor plaintiff during the period between the date of the accident and the time she attained twenty-one years of age. We are thoroughly convinced that the jury was in no way misled by this inadvertent error for the general trend of the charge made it

clear that the recovery of damages was to be based on the family relation, which might continue beyond that period. The charge, considered as a whole, presented the issues fairly to the jury.

Finally, counsel for minor plaintiff strenuously argues that the verdict is against the weight of the evidence. At the trial there was evidence which was conflicting and, therefore, required submission to the jury. The record clearly reveals that there was ample credible testimony, if believed, to warrant the jury in concluding that Mrs. Muzychuk attempted to alight from the moving cab or jumped therefrom, and that her own negligence caused the injuries which resulted in her death. One new trial has been allowed and the propriety of granting another was a matter for the trial judge, and in his refusal so to do, we find no abuse of discretion.

Judgment affirmed.